USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/28/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN W. HOLLAND,

Plaintiff,

-v-

JPMORGAN CHASE BANK, N.A., and CHASE
BANK USA, N.A.,

Defendants.

19 Civ. 00233 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case involves an alleged violation of the Telephone Consumer Protection Act,
47 U.S.C. §§ 227 *et seq*. ("TCPA"). Plaintiff Steven W. Holland asserts that, beginning in
August 2012, he received repeated telephone calls relating to five Chase credit card accounts.
Holland alleges that defendants JPMorgan Chase Bank, N.A. ("JPMC") and Chase Bank USA,
N.A. ("Chase" and, together with JPMC, "defendants") used an automated telephone dialing
system ("auto-dialer") to place a "barrage" of robocalls without his prior express consent, in
violation of the TCPA.

Before the Court is defendants' motion to dismiss. Defendants argue that Holland lacks
standing to proceed against JPMC, that his claim is barred by the doctrine of res judicata and by
the relevant statute of limitations, and that his Complaint, by neglecting to distinguish the
conduct of each defendant, fails to satisfy the pleading requirements of Federal Rule of Civil
Procedure 8.

For the reasons that follow, the Court grants defendants' motion to dismiss.

## I.     Background

### A.     Factual Background[1]

#### 1.     The Parties

Holland is a physical therapist who resides in Harrison County, Mississippi. Compl. ¶¶ 5–6.

Before 2019, JPMC and Chase were the two principal bank subsidiaries of non-party JPMorgan Chase & Co. ("JPM"), a financial holding company incorporated under Delaware law. Dkt. 23 ("Def. Supp. RJN"), Ex. 1 at 1; Dkt. 32 ("Pl. Mem."), Ex. 13 at 1. JPMC is a national banking association incorporated under Ohio law. Dkt. 22 ("Def. RJN"), Ex. 11; Pl. Mem., Ex. 13 at 1. Chase was a national banking association incorporated under Delaware law. *Id.* Chase was engaged in the business of issuing and servicing credit card accounts. Def. RJN, Ex. 14; Pl. Mem., Ex. 13 at 1.

---

[1] The facts are drawn primarily from the Complaint, Dkt. 9 ("Compl."), and the letters attached thereto, Dkts. 9-1 ("Oct. 2012 Ltr."), 9-2 ("Aug. 2013 Ltr."). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit . . . ."). For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). *But see Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ("[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."). As discussed below, the Court has also considered nearly all the documents attached to defendants' requests for judicial notice, Dkts. 22–23, and plaintiff's motion for such notice, Dkt. 34 ("Pl. RJN"), although not for the truth of the matters asserted therein. *See Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008).

Additionally, for the purpose of resolving defendants' motion to dismiss for lack of standing, the Court considered the Declaration of Steven W. Holland, Dkt. 31 ("Holland Declaration" or "Holland Decl."), the exhibits attached to Holland's opposition brief and declaration, Dkts. 31–32, and the affidavits filed by defendants, Dkts. 20–21. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

On December 4, 2018, JPMC filed a merger application with its regulator, the Office of the Comptroller of the Currency ("OCC"), to request approval for Chase to merge with and into JPMC. Pl. RJN, Ex. 1. On January 17, 2019, the merger application was approved, and on May 18, 2019, the merger became effective. Pl. RJN, Ex. 2.

## 2.     Holland's Credit Card Accounts and Defendants' Robocalls

Holland held five credit card accounts with Chase, which were closed in October 2009. Oct. 2012 Ltr.; Aug. 2013 Ltr. In August 2012, defendants allegedly initiated a "barrage" of robocalls regarding Holland's accounts to his cellular telephone number and his physical therapy office telephone number. Compl. ¶¶ 9, 11. Although the Complaint is less than clear as to which defendant made the relevant robocalls, Holland appears to allege the calls were made by one or both of Chase and/or JPMC.[2] *Id.*

On at least some calls that Holland answered, he "was greeted by a brief period of unnatural silence and/or an audible click/beep prior to a live representative joining the line . . . telltale signs of an automated telephone dialing system." *Id.* ¶ 18. The calls either transmitted a prerecorded message before a representative joined the line or left a prerecorded voicemail message. *Id.* ¶ 19. Holland alleges that at least some of the calls featured the message: "This is an important message from Chase Card Services. Please return this call today at 1-866-865-2297. Thank you." *Id.* The robocalls were made without Holland's consent. *Id.* ¶ 20.

The robocalls caused "constant interruptions" during Holland's treatment of patients, as well as embarrassment to Holland. *Id.* ¶ 13. Holland alleges that the disruptions "consistently and materially interfered with [his] ability to effectively render treatment to his patients." *Id.* ¶ 11; *see* Aug. 2013 Ltr.

_____

[2] The Complaint refers to the defendants collectively throughout and never distinguishes between the conduct of each. *See* Compl. ¶ 8 (defining JPMC and Chase collectively as "CHASE").

On October 10, 2012, Holland sent a letter to "Chase Bank USA, NA," demanding that the calls stop. Oct. 2012 Ltr.; Compl. ¶ 14. The robocalls persisted, prompting Holland to send another letter to "Chase Bank USA, NA" on August 28, 2013, again demanding that Chase cease calling his cellular and office telephone numbers. Aug. 2013 Ltr.; Compl. ¶ 14. Holland also repeatedly, when he answered the robocalls, instructed the callers that the collection calls were being made in error, and he demanded that the calls stop. Compl. ¶ 15. Despite Holland's repeated demands, he allegedly received in excess of 250 auto-dialed calls from one or both defendants. *Id.* ¶ 16.

### B.    Procedural History

On January 24, 2019, Holland filed the Complaint against Chase and JPMC, attaching the October 2012 and August 2013 letters. Compl. On March 7, 2019, defendants filed the instant motion to dismiss the Complaint, Dkt. 18, along with their memorandum of law in support, Dkt. 19 ("Def. Mem."), the affidavit of Michelle Frasco, Dkt. 20 ("Frasco Aff."), and the affidavit of Alicia Hernandez, Dkt. 21 ("Hernandez Aff."). On March 8, 2019, defendants additionally filed two requests for judicial notice of 14 documents related to the motion to dismiss. Def. RJN; Def. Supp. RJN. On April 9, 2019, Holland filed a memorandum of law in opposition, Pl. Mem., attaching 14 exhibits. Holland also filed the Holland Declaration, attaching a letter from Chase and account statements. Holland Decl., Ex. 1. On April 22, 2019, defendants filed their reply. Dkt. 33.

On June 11, 2019, without advance notice or leave of the Court, Holland filed a motion for judicial notice, attaching five exhibits relating to the merger of Chase with and into JPMC. Pl. RJN. In the same filing, Holland made arguments in favor of taking judicial notice of the 14 exhibits previously attached to his opposition. *Id.* On June 20, 2019, defendants filed a response in opposition to the motion. Dkt. 35. On July 9, 2019, Holland filed a reply. Dkt. 43.

## II.    Judicial Notice

### A.    Legal Standards

Under Federal Rule of Evidence 201, a court may take judicial notice, at "any stage of the proceeding," of any fact "that is not subject to reasonable dispute because" it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (d). When considering a Rule 12(b)(6) motion, the Court may take judicial notice of certain matters of public record without converting the motion into one for summary judgment. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Staehr*, 547 F.3d at 426 (2d Cir. 2008) ("[M]atters judicially noticed by the District Court are not considered matters outside the pleadings.") (citing 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Pro. § 1366 & n. 33 (3d ed. 2004)); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991) (courts may "take judicial notice of the contents of relevant public disclosure documents . . . as facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") (internal quotation marks and citation omitted).

Pursuant to Rule 201, courts have considered documents publicly filed with the SEC or FINRA, documents filed with a Secretary of State, documents filed with governmental entities and available on their official websites, and information publicly announced on certain non-governmental websites, such as a party's official website. *See, e.g.*, *Kramer*, 937 F.2d at 774 (SEC filings); *Forgione v. Gaglio*, No. 13 Civ. 9061 (KPF), 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015) (FINRA filings); *Chevron Corp. v. Salazar*, 807 F. Supp. 2d 189, 193 n.5 (S.D.N.Y. 2011) (merger agreement filed with Delaware Secretary of State); *Am. Cas. Co. of Reading, PA. v. Lee Brands, Inc.*, No. 05 Civ. 6701 (SCR), 2010 WL 743839, at *4

(S.D.N.Y. Mar. 3, 2010) (corporate certificate of dissolution filed with California Secretary of State); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.") (internal quotation marks and citation omitted).

A district court may also take judicial notice of filings made in another court "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013) (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992)); *see also, e.g.*, *Staehr*, 547 F.3d at 425 ("[I]t is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents.") (emphasis omitted). Particularly relevant here, "it is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation." *Cowan v. Codelia*, No. 98 Civ. 5548 (JGK), 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2001) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)).

## B.    Application

Defendants have made two requests for judicial notice. Def. RJN; Def. Supp. RJN. The documents attached to these requests broadly fall into three categories: (1) court filings from *Barrow v. JPMorgan Chase Bank, N.A.*, No. 16 Civ. 3577 (N.D. Ga. 2016), which relate to Holland's tolling argument, Def. RJN, Exs. 1–5; (2) court filings from *Gehrich v. Chase Bank USA, N.A. et al.*, No. 12 Civ. 5510 (N.D. Ill. 2012), which relate to defendants' res judicata

argument, Def. RJN, Exs. 6–9; and (3) regulatory filings and related documents maintained and provided by governmental agencies, Def. RJN, Exs. 10–14; Def. Supp. RJN, Ex. 1.

For purposes of the motion to dismiss under Rule 12(b)(6), the Court takes judicial notice of the two sets of court filings "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings," *Kalimantano GmbH*, 939 F. Supp. 2d at 404, and "to determine whether [the present] claims are barred by prior litigation," *Cowan*, 2001 WL 856606, at *1.[3]

Similarly, the Court takes judicial notice of the representations in JPM's Form 10-K for the fiscal year ending December 31, 2017, Def. RJN, Ex. 10, as well as the four documents from the websites of the OCC and the Federal Deposit Insurance Corporation ("FDIC"), Def. RJN, Exs. 11–14. Specifically, the Court notes the representations in the regulatory filings that, prior to 2019, JPMC and Chase were separate legal entities incorporated in different states and that Chase issued and serviced credit card accounts during that time. These facts are "not subject to reasonable dispute because" they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see, e.g.*, *Kramer*, 937 F.2d at 774.

---

[3] The Court is unpersuaded by defendants' argument that the tolling-related court filings are integral to or incorporated by reference in the Complaint, so as potentially to be susceptible of being considered for the truth of the matters asserted therein. *See* Def. RJN at 2–3. "Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Further, "[t]ypically, an integral matter is a contract, agreement, or other document essential to the litigation," because a matter will only be "deemed integral to the complaint when the complaint relies heavily upon its terms and effect." *Palin v. New York Times Co.*, 2019 WL 3558545, at *4 (2d Cir. 2019). Holland's single reference to a prior class action settlement in a footnote to the Complaint does not incorporate by reference or make integral the documents filed in that action. In any event, the point is largely academic here, since the tolling issue can be resolved without reference to the truth of the matters asserted in the prior litigation.

Holland, in turn, asks the Court to take notice of the following facts: that (1) "the Merger of [Chase] with and into [JPMC] was consummated on May 18, 2019"; (2) "[JPMC] is the sole resulting corporate entity"; (3) "[JPMC] owns the 'Chase' name and 'Octagon Symbol' Trademarks/Service Marks"; (4) "as a result of the merger, [JPMC] is liable for the pre-merger conduct of both [d]efendants"; (5) the OCC and the Consumer Financial Protection Bureau ("CFPB") each instituted enforcement actions against Chase and JPMC collectively regarding unlawful credit servicing practices; and (6) Holland's credit card "statements were published with the 'Chase' name and 'Octagon Symbol.'" Pl. RJN at 3, 10–11, 14.

Among these facts, the Court takes judicial notice that defendants have represented to government agencies that Chase merged into JPMC, with JPMC surviving as the sole resulting corporate entity and acquiring, *inter alia*, the "Chase" name and the "Octagon Symbol" trademark. These facts are contained in publicly available documents filed with government agencies—including SEC filings, OCC and Federal Reserve records, and United States Patent and Trademark Office records—and documents from Chase's website. These provide a proper basis for judicial notice. *See, e.g.*, *Kramer*, 937 F.2d at 774; *Forgione*, 2015 WL 718270, at *17; *Salazar*, 807 F. Supp. 2d at 193 n.5; *Lee Brands*, 2010 WL 743839, at *4; *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (information on party's website). For the same reasons, the Court takes notice of JPMC's representation in its merger application filed with OCC, Pl. RJN, Ex. 1, that "[JPMC] shall be responsible for all liabilities of [Chase]."[4] The Court also takes notice of the existence of the OCC and CFPB

---

[4]To the extent that Holland sought to have this Court take judicial notice of a legal conclusion regarding JPMC's liability "for the pre-merger conduct of both [d]efendants," however, such a conclusion is not the type of "fact that is not subject to reasonable dispute" contemplated by Federal Rule of Evidence 201(b).

enforcement actions against Chase and JPMC, although the Court does not consider the filings in these actions for the truth of the matters asserted therein. *See Staehr*, 547 F.3d at 425.

The Court cannot, however, consider, in resolving defendants' motion under Rule 12(b)(6), the Holland Declaration and the letter and account statements attached to it.[5] Holland Decl. & Ex. 1. In this Circuit, it is "clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *see Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 69 (2d Cir. 2011) (in resolving motion under Rule 12(b)(6), court "properly rejected consideration" of plaintiff's affidavits that contained new factual allegations not in complaint). *Agu v. Rhea*, No. 09 Civ. 4732 (JS) (AKT), 2010 WL 5186839 (E.D.N.Y. Dec. 15, 2010), on which Holland relies, is not to the contrary. That case involved a *pro se* plaintiff and the documents at issue were integral to his complaint—neither of which is the case here. *See Palin*, 2019 WL 3558545, at *4 (document is integral where its terms and/or effect are essential to the litigation).

This limitation on the scope of the Court's notice, however, does not apply to the motion to dismiss under Rule 12(b)(1). *See Makarova*, 201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

---

[5] This limitation does not have substantive consequences in this case. The limited proposition for which plaintiff sought to have the Holland Declaration and attachments noticed—that the account statements contained the Chase logo and Octagon Symbol—would not, if treated as true, affect the resolution of defendants' motion under Rule 12(b)(6).

## III.     Motion to Dismiss

Defendants move to dismiss for lack of standing, under Rule 12(b)(1), and for failure to state a claim, under Rule 12(b)(6).

### A.     Motion to Dismiss for Lack of Standing Under Rule 12(b)(1)

The Court first addresses standing, because it is necessary for subject matter jurisdiction. *See, e.g.*, *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).

### 1.     Applicable Legal Principles

Constitutional standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113). Article III standing consists of three "irreducible" elements: (1) injury-in-fact, (2) a causal connection between the injury and the conduct complained of, meaning that "the injury has to be fairly traceable to the challenged action of the defendant"; and (3) redressability of the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted); *see Cacchillo*, 638 F.3d at 404 (reciting the "three familiar elements of standing: injury in fact, causation, and redressability"). A plaintiff must "demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).

A motion to dismiss for lack of Article III standing may be facial or factual. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016); *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2004). A "*facial* attack challenges the sufficiency of the jurisdictional facts alleged, not the facts themselves." *Tasini*, 184 F. Supp. 2d at 353 (internal quotation marks and citations omitted); *cf. John v. Whole Foods Mkt. Grp.*, 858 F.3d 732, 736

10

(2d Cir. 2017) ("[B]ecause [defendant] mounts only a 'facial' challenge to [plaintiff]'s allegations of standing, [plaintiff] bears no evidentiary burden at the pleading stage.").

By contrast, a *factual* attack "challenges whether sufficient facts exist for the court to determine that it has jurisdiction to hear the plaintiff's claims." *Tasini*, 184 F. Supp. 2d at 353 (internal quotation marks and citation omitted). On a factual challenge, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 86 n.4 (2d Cir. 2006) ("Article III standing needs to be established, not merely pleaded, in order to give a federal court the authority to exercise federal question jurisdiction."); *Baur*, 352 F.3d at 637 ("[A] plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing."). In determining whether plaintiff has made the required showing of standing, "a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. If the extrinsic evidence presented by a defendant in support of a factual challenge "is material and controverted," the district court must "make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57.

### 2. Application

Holland asserts an identical claim for violation of the TCPA against each of Chase (the "Chase claim") and JPMC (the "JPMC claim"). A plaintiff proceeding against multiple defendants must establish standing as to each defendant and each claim. *See, e.g.*, *Mahon*, 683 F.3d at 65–66 (affirming dismissal of two defendants and rejecting that "a plaintiff's injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants"); *Cacchillo*, 638 F.3d at 404 (a plaintiff must "demonstrate standing for each claim and form of relief sought").

Defendants attack the factual basis for Holland's assertion of standing as to the JPMC claim only—not as to the Chase claim. Specifically, defendants assert that JPMC neither issued Holland's accounts nor ever made a robocall to Holland. Holland counters that: (1) even prior to the merger, the robocalls were "legally . . . attributable to both [JPMC] and [Chase]," Pl. Mem. at 8–9; (2) to the extent the calls were not previously attributable to JPMC, the later merger of JPMC and Chase is "dispositive" of defendants' standing challenge, Pl. RJN at 18; and (3) the robocalls were "factually attributable" to JPMC—in other words, that JPMC itself caused the calls to be made, *id.* The Court addresses these arguments in turn.

First, Holland argues that the robocalls were legally attributable to JPMC due to JPMC's pre-merger relationship with Chase. *See* Pl. Mem. at 9–15. Before the May 18, 2019 merger of Chase with and into JPMC, Chase and JPMC were formally separate legal entities incorporated in different states. *See* Def. RJN, Exs. 10–14. Holland does not argue that Chase and JPMC were alter egos or had any sort of agency relationship. *See* Pl. RJN at 16 n.26 (conceding that Holland has not so asserted). Nor has he presented any evidence that, before the merger, Chase and JPMC were anything other than legally distinct, though related, corporations.

Given these facts, Holland's first argument fails. It is well-established that "[t]he law allows a corporation to organize so as to isolate liabilities among separate entities." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). At the time of the alleged injury—indeed, at the time this motion to dismiss was fully submitted—Chase and JPMC were each a subsidiary of JPM. Despite a common parent, Chase and JPMC were entitled to "the presumption of separateness afforded to related corporations." *Kalin v. Xanboo, Inc.*, No. 04 Civ. 5931 (RJS), 2009 WL 928279, at *11 (S.D.N.Y. Mar. 30, 2009) (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)). Holland's oblique references to the affiliation between Chase and

JPMC—*e.g.*, discussing JPMC's current ownership of the Chase logo and agency enforcement actions taken collectively against JPMC and Chase—do not overcome that presumption. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 306 F. Supp. 3d 610, 625 (S.D.N.Y. 2018) (allegations that investment bank and affiliate were "intertwined" did not make either entity liable for conduct of the other); *cf. Earl v. Novartis Consumer Health, Inc.*, No. 07 Civ. 9595 (RMB), 2008 WL 4274468, at *4 (S.D.N.Y. Sept. 12, 2008) (parent is liable for the acts of its subsidiary only under "extraordinary circumstances"). Chase's alleged robocalls to Holland's cellular and office telephone numbers, which pre-date the merger of JPMC and Chase, thus cannot be attributed to JPMC.

Second, Holland argues that the merger of Chase into JPMC is "dispositive" of and "wholly extinguish[es]" defendants' claim of a lack of standing to sue JPMC because JPMC allegedly acquired Chase's liabilities in the merger. That, too, is wrong. A plaintiff must establish standing for each claim and as to each defendant. *See Mahon*, 683 F.3d at 65–66; *Cacchillo*, 638 F.3d at 404. Holland must show, *inter alia*, that for each claim his injury is "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560. Because the two defendants here were legally distinct at the time of the alleged robocalls, Holland, but for the merger, would need to establish that his injury was fairly traceable to the conduct of Chase in order to pursue the Chase claim and, separately, that his injury was fairly traceable to the conduct of JPMC in order to pursue the JPMC claim.

To be sure, under the merger, JPMC appears to have acquired the assets and liabilities of Chase—presumably including any potential liability arising from this lawsuit. But that fact does not mean that Chase's prior conduct is now legally attributable to JPMC. Rather, it would make JPMC potentially liable for the Chase claim *only to the extent that Chase itself could have been*

*liable*. That JPMC now is accountable to redress Chase's liabilities does not make Chase's pre-merger conduct "fairly traceable" to JPMC. *See Lujan*, 504 U.S. at 560. To the extent that a factual basis for the JPMC claim was lacking pre-merger, the merger does not and cannot retroactively fill that void.[6] Chase's alleged pre-merger robocalls are not made legally attributable to JPMC by the defendants' later combination.

Finally, Holland argues that the robocalls were "factually attributable" to JPMC. Pl. Mem. at 9. To the extent that this third argument imputes Chase's conduct to JPMC, as appears to be the case, this argument is unavailing. However, although this is not so stated in the Complaint, in a footnote for his request for judicial notice, Holland claims that "the violative calls were made by" JPMC. Pl. RJN at 16 n.26. This argument is procedurally improper, insofar as Holland made it for the first time in a supplemental pleading filed without permission of the Court months after the motion to dismiss had been fully briefed. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 164 n.5 (S.D.N.Y. 2015) (disregarding supplemental letter because it "improperly raises new arguments after the close of briefing and argument, without having sought or obtained permission for such a submission"); *see also Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 288 (S.D.N.Y. 2018).

In any event, considered on the merits, this late-made theory fails. Putting aside his conclusory allegation that the calls were made by JPMC, Holland recites only the following two facts as a basis for attributing these calls to JPMC: (1) during at least some of the relevant time period, JPMC, in addition to Chase, issued and serviced credit cards, Pl. Mem. at 9–11; and (2)

---

[6] Put differently, the JPMC claim—arising out of JPMC's conduct—remains a direct claim against JPMC. The Chase claim—arising out of the conduct of Chase—is, post-merger, an indirect claim as against JPMC, with JPMC's liability, if any, derivative of Chase's.

the Chase and Octagon Symbol logos, now owned by JPMC, are used on Chase's website, *id.* at 12–14. Defendants counter with evidence that while Holland held five credit card accounts with Chase, he had no relationship with JPMC. Defendants provided two sworn affidavits directly corroborating this position, *see* Frasco Aff. ¶¶ 4–5; Hernandez Aff. ¶ 3, and extrinsic evidence establishing that Chase, not JPMC, was the JPM entity primarily, if not entirely, responsible for issuing cards and servicing credit card accounts, *see* Def. RJN, Exs. 10–14. And Holland's position is belied by the two letters attached to his own Complaint. Oct. 2012 Ltr.; Aug. 2013 Ltr. The letters are each addressed solely to Chase, state that the accounts at issue are "five credit card accounts with Chase Bank, NA," and thus strongly signal that the accounts were held with Chase, not JPMC. Oct. 2012 Ltr.; *see* Aug. 2013 Ltr.

On its review of the pleadings and the cognizable evidence presented, the Court finds that it is far more likely than not that JPMC did not call Holland about his credit card accounts, and that Holland, far from carrying his burden to prove by a preponderance that jurisdiction exists for the JPMC claim, *see Giammatteo*, 452 F. App'x at 27, has not presented any credible evidence to this effect. The evidence adduced does not literally preclude the possibility that JPMC may have made robocalls to his telephone numbers, but any finding here to that effect would rest solely on speculation. Holland has given the Court no reason to infer that, during the period at issue, JPMC was calling, or robocalling, individuals who held accounts solely with Chase. Defeating a factual challenge to standing requires more from a plaintiff. *See, e.g., Baur*, 352 F.3d at 637 (plaintiffs "cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing"); *Drakos*, 140 F.3d at 131 ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.").

Because Chase's robocalls were not legally attributable to JPMC and Holland has failed to present a factual basis supporting his assertion that JPMC itself made any of the robocalls, the Court lacks subject matter jurisdiction over the JPMC claim. *See Carter*, 822 F.3d at 54 (dismissal for lack of standing "is one for lack of subject matter jurisdiction"). The Court, therefore, dismisses the JPMC claim, without prejudice. *See id.*

**B.      Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

Defendants—now limited to Chase—move to dismiss for failure to state a claim on the grounds that: (1) Holland, by neglecting to distinguish the conduct of each defendant, fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8; (2) his claim is barred by the doctrine of res judicata; and (3) his claim is barred by the four-year statute of limitations for TCPA claims.

**1.      Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Although the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

## 2.    Failure to Distinguish Between the Conduct of Defendants

Defendants first argue that the Complaint fails to satisfy Rule 8 by failing to differentiate among the two defendants, instead persistently defining Chase and JPMC collectively as "CHASE." Compl. ¶ 8. The Complaint even blurs the identity of the entity that issued Holland's accounts and placed the robocalls. *See* Compl. ¶¶ 9, 11–16. Urging dismissal, defendants cite *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, for the proposition that a "failure to isolate the key allegations against each defendant supports dismissal" under *Twombly* and *Iqbal*. No. 12 Civ. 2837 (KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012).

While defendants fairly fault Holland for sloppy pleading, dismissal on this ground is not required here. "Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 771 (S.D.N.Y. 2018) (internal quotation marks and citation omitted). Although Holland cannot establish standing or avoid a statutory time bar by obfuscating which defendant engaged in particular conduct, it is clear that his Complaint, at its core, attributes the calls made to him to Chase personnel. Under these circumstances, requiring dismissal of the claim against Chase solely because Holland wrongly lumped JPMC together with Chase would be a bridge too far.

Moreover, *Ochre* is distinguishable. The court there held that the Complaint did not plead a copyright-infringement claim where it sued four entirely separate entities—"a design firm, an architect, a hotel, and a procurement agent"—and did not separate out "the key allegations against each." *Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 Civ. 5449 (NSR), 2015 WL 7758894, at *3 (S.D.N.Y. Dec. 1, 2015) (citing *Ochre*, 2012 WL 6082387, at *6)). In contrast here, JPMC and Chase are affiliated entities engaged in related lines of business with a

shared corporate parent. *See, e.g.*, *RD Legal Funding*, 332 F. Supp. 3d at 771 (distinguishing

*Ochre* for similar reasons); *Aghaeepour*, 2015 WL 7758894, at *3 (same). Read fairly,

Holland's Complaint gives Chase "fair notice of what the . . . claim is and the grounds upon

which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 8 thus does not require

dismissal of the Chase claim here.

### 3. Res Judicata

"Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits

of an action precludes the parties or their privies from relitigating issues that were or could have

been raised in that action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499

(2d Cir. 2014) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000)). A party asserting

the affirmative defense of claim preclusion must show that "(1) the previous action involved an

adjudication on the merits; (2) the previous action involved the [same adverse parties] or those in

privy with them; and (3) the claims asserted in the subsequent action were, or could have been,

raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d

102, 108 (2d Cir. 2015) (quoting *TechnoMarine*, 758 F.3d at 499). "The preclusive effect of a

federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880,

891 (2008).

A district court "may consider a *res judicata* defense on a Rule 12(b)(6) motion to

dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or

incorporated therein, and materials appropriate for judicial notice." *TechnoMarine*, 758 F.3d

at 498 (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)).[7]

---

[7] As discussed above, the four court filings from the *Gehrich* class action, Def. RJN, Exs. 6–9, are appropriate for judicial notice "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings," *Kalimantano GmbH*, 939 F.

The Chase claim is barred by the doctrine of *res judicata*, as defendants have satisfied all the above criteria.

As to the first criterion, it is undisputed that the *Gehrich* class action concluded with a dismissal, with prejudice, as a result of a settlement agreement. *See* Def. RJN, Ex. 9 ("*Gehrich* Docket Report") No. 286; *see generally Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016). And "it is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for *res judicata* purposes." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002); *see also Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) ("A voluntary dismissal with prejudice is an adjudication on the merits for purposes of *res judicata*.").

As to the second criterion, it is "well settled in this circuit that literal privity is not a requirement for *res judicata* to apply." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). Instead, "a party will be bound by the previous judgment if his interests were adequately represented by another vested with the authority of representation." *Id.* (internal quotation marks omitted). "Representative suits with preclusive effect on nonparties include properly conducted class actions." *Taylor*, 553 U.S. at 894; *see also, e.g., Yon Won Liao v. Holder*, 691 F. Supp. 2d 344, 353 (E.D.N.Y. 2010) (plaintiffs' claims barred by *res judicata* where "the language defining the class in [the prior litigation]" encompassed plaintiffs).

The language defining the class in *Gehrich* clearly encompassed Holland. The *Gehrich* settlement class was defined as "[a]ll persons to whom . . . [Chase] and/or [JPMC] placed a non-emergency call . . . to a cellular telephone through the use of an automatic telephone dialing

Supp. 2d at 404, and "to determine whether [the present] claims are barred by prior litigation," *Cowan*, 2001 WL 856606, at *1.

system and/or an artificial or prerecorded voice" in violation of the TCPA. Def. RJN, Ex. 8 at 3; *Gehrich*, 316 F.R.D. at 222. Holland's allegations put him squarely within that class. He alleges that Chase and JPMC "used an 'automatic telephone dialing system' to place the calls," which "transmitted a prerecorded message" to Holland's "cellular telephone number for '[non]-emergency purposes.'" Compl. ¶¶ 18–21. Holland thus was "in privy" with the *Gehrich* plaintiffs and his claims "were, or could have been, raised in the prior action." *Marcel Fashions*, 779 F.3d at 108.

Notably, Holland does not dispute that he fits within the *Gehrich* class definition. He argues instead that he lacked sufficient notice of the *Gehrich* class action to have his claim barred by its settlement. *See* Pl. Mem. at 23. Holland supports this position by attesting, in the Holland Declaration, that he did not receive notice of the class settlement and would have opted out if had he received it. Holland Decl. ¶¶ 1–4. But that response is deficient for multiple reasons. For one, the Holland Declaration is not cognizable. A plaintiff "may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu*, 265 F.R.D. at 122–23; *see Matson*, 631 F.3d at 69 (in resolving a motion to dismiss under Rule 12(b)(6), the district court "properly rejected consideration" of plaintiff's affidavits that contained new factual allegations not contained in the complaint).

Even if this Court could consider Holland's testimony on a Rule 12(b)(6) motion, "actual notice to each and every class member" is not required. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987). Rather, Federal Rule of Civil Procedure 23 requires only that absent members of a Rule 23(b)(3) class, such as the one in *Gehrich*, receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). The "adequacy of a settlement

notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005). Reasonableness is a "flexible standard," *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 225 (2d Cir. 2012), and it is determined by reviewing the notice program as a whole, *see id.* at 224 (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("Where . . . the notice of settlement prompts widespread reaction from class members, it would appear that the notice has served its due process purpose.").

Notice of the *Gehrich* class action settlement was provided via mail, email, and publication in national magazines, and class members were contacted a second time as a reminder. *Gehrich*, 316 F.R.D. at 232. The district court that approved the *Gehrich* settlement concluded that "the notice provided went well beyond what was required." *Id.* Reviewing the filings from *Gehrich* "to determine whether [the present] claims are barred by prior litigation," *Cowan*, 2001 WL 856606, at *1, the Court here agrees that the notice program in *Gehrich* was "well-tailored to reach the maximum number of class members," *Gehrich*, 316 F.R.D. at 232, and was adequate under both the Federal Rules and the Due Process Clause.[8]

---

[8] Holland separately argues, citing 28 U.S.C. § 1715, that notice was inadequate because the *Gehrich* defendants failed to provide notice to the appropriate state official in Mississippi. However, where, as in *Gehrich*, "the defendant is a Federal depository institution, a depository institution holding company, . . . or a non-depository institution subsidiary of the foregoing," the notice requirements of § 1715 "are satisfied by serving the notice . . . upon the person who has the primary Federal regulatory or supervisory responsibility with respect to the defendant . . . ." 28 U.S.C. § 1715(c)(1). In order "not to be bound by a settlement agreement . . . [a] class member must demonstrate[] that the notice required . . . has not been provided," and a class member will be bound "if the notice required . . . was directed to the appropriate Federal official." *Id.* § 1715(e). Thus, this argument, too, is unavailing.

Finally, as to third criterion, the parties dispute the extent of the preclusive effect of the *Gehrich* settlement. Under the doctrine of *res judicata*, the "preclusive effect of a settlement is measured by the intent of the parties to the settlement," as evidenced by the language of the settlement agreement. *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir. 1992).

Here, the text of the *Gehrich* settlement agreement provides that Chase and JPMC would be released from any and all claims "related to automatic telephone dialing systems or callers using an articial or prerecorded voice[]" that arose on or before the date of preliminary approval of the settlement, which occurred on August 12, 2014. *Gehrich*, 316 F.R.D. at 231; *see* Def. RJN, Ex. 7 at 18–20 (setting forth the "Releases" of the *Gehrich* Settlement Agreement); *Gehrich* Docket Report No. 116 (preliminary approval of settlement on August 12, 2014). As discussed further below, Holland's Complaint alleges that he received robocalls only in 2012 and 2013. Nowhere in his Complaint or in other documents cognizable on the Rule 12(b)(6) motion does Holland allege that he received robocalls on or after August 12, 2014. Thus, Holland's claim against Chase is precluded by the *Gehrich* class action.

### 4. Statute of Limitations

Alternatively, the Chase claim is barred by the TCPA's statute of limitations. Claims under the TCPA are subject to a four-year statute of limitations. *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 107 (2d Cir. 2013) (applying generic federal statute of limitations in 28 U.S.C. § 1658 to claims brought under TCPA). At the pleading stage, a district court may dismiss a claim on statute of limitations grounds only if the claim is clearly untimely on the face of the complaint. *See, e.g.*, *Brewer v. Hashim*, 738 F. App'x 34, 34–35 (2d Cir. 2018) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

Here, Holland's Complaint alleges that the robocalls began "in or about August of 2012" and continued through August 28, 2013. Compl. ¶ 11; *see id.* ¶¶ 12–14. Notably, it did not allege that the calls continued past January 9, 2015—four years before January 9, 2019, when the Complaint was filed. Instead, to attempt to justify the otherwise delinquent filing, the Complaint, in a footnote, declares that "the statute of limitations under the TCPA was tolled prior to [Holland] opting out of the settlement class in a certified class action case filed in the Northern District of Georgia, *Barrow v. JPMorgan Chase Bank, N.A.,* . . . [such that] any calls that were initiated by [defendants] to [Holland's] aforementioned cellular telephone number after August 16, 2012 are subject to liability under the TCPA." *Id.* ¶ 16 n.1. To be sure, in the Holland Declaration submitted in opposition to the motion to dismiss, Holland, for the first time, alleged that the robocalls he "received from Chase, which are the subject of this lawsuit, continued after January 9, 2015." Holland Decl. ¶ 8. But, as discussed above, Holland "may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu,* 265 F.R.D. at 122–23; *see Matson,* 631 F.3d at 69. Thus, on the face of the Complaint, the Chase claim, measured by the allegations in the Complaint, is time-barred.[9]

---

[9] Holland cites two cases for the proposition that a plaintiff need not plead facts showing the absence of a statute of limitations defense, but both are inapposite. *See Fargas v. Cincinnati Mach., LLC,* 986 F. Supp. 2d 420 (S.D.N.Y. 2013); *Reach Music Publishing, Inc. v. Warner/Chappell Music, Inc.,* No. 09 Civ. 5580 (LTS), 2009 WL 3496115 (S.D.N.Y. Oct. 23, 2009). Each involved a complaint that did not plead facts as to the relevant dates. *See Fargas,* 986 F. Supp. 2d at 427 (rejecting statute of limitations defense where "the [c]omplaint contains no information as to the date of the . . . tender or delivery"); *Reach Music,* 2009 WL 3496115, at *2 (rejecting assertion of untimeliness "because the [c]omplaint is silent" as to the relevant dates). Here, by contrast, the Complaint alleges the time period in which the alleged TCPA violations occurred—in 2012 and 2013—and therefore is susceptible to dismissal for failure to plead a timely claim.

Holland's argument that the statute of limitations was tolled by *Barrow v. JPMorgan Chase Bank, N.A.*, No. 16 Civ. 3577 (N.D.Ga. 2016), under the class action tolling doctrine of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), fares no better. It is well established in this Circuit that "the statute of limitations cannot be 'suspended from running in favor of a person not named as a defendant in [a] class suit." *Earl*, 2008 WL 4274468, at *4 (quoting *Arneil v. Ramsey*, 550 F.2d 774, 782 (2d Cir. 1977); *see Santiago v. Fischer*, No. 09 Civ. 1383 (MKB), 2017 WL 4349378, at *5 (E.D.N.Y. Sept. 29, 2017) (collecting cases). The only named defendant in the *Barrow* class action was JPMC; Chase was never a defendant in that action. *See* Def. RJN, Exs. 1–5. Accordingly, the statute of limitations could not have been tolled as to the Chase claim, and that claim was time-barred before the filing of this Complaint. Thus, as an alternative ground for dismissal, the Chase claim is untimely on its face.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss. The dismissal is, however, without prejudice to plaintiff's right to replead, consistent with the parameters set in this decision. In the event plaintiff intends to so file, an amended complaint is due within 14 days of this decision.

The Court respectfully requests that the Clerk of Court terminate the motions pending at Dkts. 18 and 34.

SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: August 28, 2019
       New York, New York