## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

STEVEN W. HOLLAND,

      Plaintiffs

v.                               Case No.: 1:19-cv-00233

CHASE BANK USA, N.A.

      Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff, STEVEN W. HOLLAND, sues the Defendant, CHASE BANK USA, N.A., and alleges as follows:

## JURISDICTION AND VENUE

1.      Plaintiff brings this action to recover statutorily prescribed damages for acts on the part of Defendant in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.*, ("TCPA") and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et. seq.* ("FCRA").

2.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 as this case presents a federal question, and pursuant to 15 U.S.C. § 1692k(d) and/or pursuant to 28 U.S.C. § 1367 for pendant state law claims.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  Chase resides and transacts business in this District, and maintains their principal executive offices within this District.

## FACTUAL ALLEGATIONS

5.      Plaintiff is a natural person who is over the age of eighteen (18) who resides in Harrison County, Mississippi.

6.      At all times material herein, Plaintiff was employed as a physical therapist in Gulfport, Harrison County, Mississippi.

7.      Plaintiff is the regular user and carrier of the cellular telephone number at issue, (228) 343-1833, and was the "called party" with respect to the calls at issue, as further described herein. See Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 643 (7th Cir. 2012).

8.      At all times material hereto, Defendant CHASE BANK, N.A. ("CHASE"), was one of the largest national banks, domiciled in New York, with their principal executive offices at 270 Park Ave., New York, NY, 10017.

9.      As described herein, CHASE employed business practices resulting in intentional harassment, embarrassment, and interference with the employment of the Plaintiff through the use of its automated dialing system to place a barrage of erroneous computerized collection calls ("robocalls") to Plaintiff's cellular telephone number pertaining to Plaintiff's closed CHASE credit card accounts that were not delinquent, including after the debts were extinguished by operation of Mississippi law.

10.     CHASE consents of and has knowledge and control of the collection activities of its agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors with respect to the collection activities at issue, as further described herein.

11.     From approximately November 2005 through June 2007, CHASE issued five (5) credit card accounts to Plaintiff.

12.     In 2009, all five of the credit card accounts were closed. Plaintiff thereafter registered the accounts for autopay to make the monthly payments for the balances owed on the

accounts by the respective due date for each accounts. Plaintiff set up the automatic payments using CHASE's "Minimum Payment AutoPay Program."

13.     In approximately October of 2011, a payment error occurred resulting in the respective monthly payments on the credit card accounts not being made by the respective due dates for that billing month. The monthly autopayments resumed the following month under CHASE's Minimum Payment AutoPay Program. However, Defendant did not apply the subsequent monthly autopayments to the interest and principal of the account balances in accordance with the amortization schedule disclosed under the Minimum Payment AutoPay Program. Rather, Defendant treated the October/November 2011 missed payment on the respective credit card accounts as a default, and began charging a late fee and finance charges each month on each of the accounts, and applying the entire amount of Plaintiff's autopayment on each account exclusively towards said late fees and finance charges, which exceeded the monthly autopayment amount for each account, resulting in the account balances escalating each month.

14.     In or about August of 2012, CHASE began initiating a barrage of computerized debt collection robocalls to Plaintiff's cellular telephone number, (228) 343-1833, and his physical therapy office telephone number, in an effort to collect the alleged past due amounts on the five credit card accounts, which consistently and materially interfered with Plaintiff's ability to effectively render treatment to his patients.

15.     On several occasions, Plaintiff answered the calls from CHASE and instructed CHASE's representatives that its calls were made in error, and to stop calling.

16.     Because of the constant interruptions from CHASE's daily robocalls to Plaintiff's aforementioned cellular telephone number and office number during Plaintiff's treatment of patients, and the embarrassment to Plaintiff upon being interrupted by CHASE's erroneous

collection calls during his treatment of patients, Plaintiff sent CHASE a letter on October 10, 2012

stating that the continuous calls from CHASE were "becoming a regular disruption in [Plaintiff's]

daily routine of patient care" and demanding that CHASE cease calling Plaintiff's work and

cellular telephone numbers. A copy of the October 10, 2012 letter is attached hereto as Exhibit

"A."

17.     Despite Plaintiff's demand in the October 10, 2012 letter that the calls stop, CHASE

continued to initiate robocalls to Plaintiff's aforementioned cellular telephone number and office

number, prompting Plaintiff to send another letter to CHASE on August 28, 2013, again

demanding that CHASE cease calling his cellular telephone and office telephone numbers. A copy

of the August 28, 2013 letter is attached hereto as Exhibit "B."

18.     Despite Plaintiff's aforementioned written requests to stop calling, as well as his

prior and subsequent verbal requests to cease calling upon answering the calls, CHASE continued

its campaign of placing computerized collection calls to Plaintiff's cellular and office telephone

numbers until approximately January of 2016 (the specific date of which will be established during

the discovery process by way of records in the possession of the parties and Plaintiff's cellular

provider).

19.     To date, as of approximately January of 2016 (or such date as will be established

during discovery), Plaintiff has received in excess of two-hundred fifty (250) autodialed and/or

prerecorded robocalls from CHASE on his aforementioned cellular telephone number.

20.     The telephone calls at issue were placed by CHASE using an "automated telephone

dialing system" as specified by the TCPA, 47 U.S.C. § 227(a)(1), which has the capacity to store

or produce telephone numbers to be called, using a random or sequential number generator, and to

dial such numbers; and/or which has the capacity to dial numbers from a list without human intervention (hereafter "ATDS" or "autodialer").

21.     That CHASE used an "automatic telephone dialing system" to place the calls at issue is evidenced by the fact that on at least some of the answered calls, Plaintiff was greeted by a brief period of unnatural silence and/or an audible click/beep prior to a live representative joining the line. These are telltale signs of an automated telephone dialing system.

22.     Moreover, the calls at issue from CHASE transmitted a prerecorded message prior to a representative joining the line, or left a prerecorded voicemail message, including as follows:

> This is an important message from Chase Card Services. Please return this call today at 1-866-865-2297. Thank you.

23.     CHASE initiated each of the calls at issue to Plaintiff's aforementioned cellular telephone number without the "prior express consent" of Plaintiff as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A) and after Plaintiff revoked any consent CHASE may have mistakenly believed it had by demanding both verbally and in writing that CHASE stop calling.

24.     Additionally, none of the telephone calls at issue were placed by CHASE to Plaintiff's aforementioned cellular telephone number for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

25.     CHASE has a corporate policy of initiating debt collection calls using an automatic telephone dialing system and/or a prerecorded or artificial voice message, just as it did when calling the Plaintiff's aforementioned cellular telephone number, as described herein.

26.     CHASE willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

36.     Additionally, CHASE has furnished "negative information"[1] concerning Plaintiff on a monthly basis to the three Consumer Reporting Agencies ("CRAs")—Transunion, Equifax, and Experian—including but not limited to representing that Plaintiff owed/owes outstanding balances to Defendant on all five (5) credit card accounts, that the alleged debts are severely delinquent, that the alleged balances are increasing, some of which escalated to well in excess of 100% of the credit limit, and that the alleged balances constitute legally valid debts owed by Plaintiff, resulting in the same being reported by all three CRAs on a monthly basis as to each of the five (5) credit card accounts. Stated another way, the Defendant's furnishing of negative information to the three CRAs proximately resulted in fifteen total instances of adverse account information being reported on Plaintiffs' three respective credit reports each month.

37.     However, contrary to the negative information furnished by Defendant to the CRAs, as of approximately December of 2014 (at the latest), the debts associated with the five credit card accounts were extinguished by operation of Mississippi law and became legally nonexistent, such that Plaintiff owed no debts to Defendant related to the five credit card accounts.

38.     Under Mississippi law, the statute of limitations on "an open account" or "any unwritten contract" is three years after the cause of action accrues. Miss. Code Ann. § 15–1–29. To that end, "an action on an open account accrues when the debtor defaults on the debt or breaches the unwritten contract."[2] See also Miss. Code Ann. § 15–1–29

---

[1] As defined by 15 U.S.C. § 1682s-2(a)(7)(G)(i).

[2] O'Fallon, 2016 WL 3248452, at *1 (citations omitted). See also McArthur v. Acme Mech. Contractors, Inc., 336 So. 2d 1306, 1307 (Miss. 1976) (citing Miss. Code Ann. § 15–1–31, which states that in "actions upon open accounts, the period of limitation shall commence to run [as to a given debt] from the date[] at which the same respectively became due and payable")

39.     At all material times, the five (5) credit card accounts at issue constituted "open accounts" and "unwritten contracts" under Mississippi and federal law.[3] Accordingly, the five credit card accounts at issue were subject to the three year statute of limitations set forth under Miss. Code Ann. § 15–1–29.

40.     For more than a century, Mississippi law has unwaveringly maintained that "[t]he completion of the period of limitation prescribed to bar any action, shall defeat and extinguish the right as well as the remedy." Miss. Code Ann. § 15-1-3(1). Mississippi's high court has repeatedly emphasized that the effect of this statute in the context of credit transactions represents a "radical" difference from most other states because:

> Under Mississippi law, the expiration of the statute of limitations on a defaulted open account extinguishes the debt itself. '[T]he account ceases to be a debt. It is completely extinguished by the statute of limitation [...].' [4]

Consequently, "[t]he relationship of debtor and creditor [is] terminated upon the running of the statute [of limitations]."[5]

41.     The Mississippi Supreme Court has specifically addressed the application of this statute to the propriety of interest charges and other incidents of the original debt after the expiration of the limitations period, explaining that when a debt is extinguished pursuant to § 15–1–3(1), "the basis for further accruals of interest [and late fees] also expire[s]," and therefore, the charging of interest and other incidents of the extinguished debt such as late fees is "barred." [6]

---

[3] See Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 619 So.2d 908, 914–15 (Miss.1993) (holding that credit card account is an "open account" under Mississippi law, and citing the Mississippi Supreme Court's definition of "open account"). See also 12 C.F.R. § 226.2(a)(20) of Regulation Z (defining "open ended credit" as having the same general characteristics identified in the Mississippi Supreme Court's definition as cited in Hickman). See also McArthur, 336 So. 2d at 1308 (Miss. 1976) ("In Mississippi an open account is an unwritten contract") (citations omitted)).

[4] O'Fallon v. Protocol Recovery Serv., Inc., 2016 WL 3248452, at *1 (S.D. Miss. 2016) (quoting Greene v. Greene, 110 So. 218, 222-23 (Miss. 1926))

[5] Hawkins v. S. Pipe & Supply Co., 259 So. 2d 696, 698 (Miss. 1972)

[6] Keller v. Citizens Bank, Columbia, Miss., 399 So. 2d 1332, 1336 (Miss. 1981)

42.     On or about July 18, 2018, Defendant sent a letter to Plaintiff, wherein Defendant noted that Plaintiff had been enrolled in Defendant's "Minimum Payment AutoPay Program" and that the monthly payment on the four credit card accounts ending in 1955, 3561, 8638, and 9718 were not made by their respective due dates of 10/09/2011, 10/23/2011, 10/27/2011 and 11/09/2011. The letter states that autopay was reinstated for the next payment period, but because the payments due in October/November 2011 were not received, "the accounts were past due, and remained past due for the next five years until they charged off in 2015." The letter goes on to state that even though autopay was resumed on those four accounts, "the accounts were never brought current from 2011 to 2015, when the accounts charged off." The letter further states that the fifth credit card account, ending in 2781, became past due as of December 31, 2010, "and remained past due until it was charged off in 2015." A true and accurate copy of the letter (without enclosures) is attached hereto as Exhibit "C."

27.     Defendant's July 18, 2018 letter thus confirms that all five of the subject credit card accounts were in default, collectively, by November of 2011 because Defendant did not receive a payment for the accounts by the respective October/November 2011 due dates, that Defendant treated the accounts as remaining "past due for the next five years," that "the accounts were never brought current from 2011 to 2015" when they were charged off, that Defendant billed late fees to the accounts each month during this 2011 to 2015 period, and that Defendant applied Plaintiff's autopayments to late fees during this period.

28.     Because the last payment due date (chronologically) identified in the letter was November 9, 2011 for the account ending in 9718, that payment became past due on November 10, 2011. Accordingly, under Mississippi law, the statute of limitations for the five credit card accounts had all expired as of November 10, 2014—three years after the last date of default for the credit

card accounts—at which time all five of the subject credit card accounts, and any debts and their incidents arising thereunder, were completely extinguished by operation of law, and the relationship between Plaintiff and Defendant as debtor and creditor was terminated.[7]

29.     It is equally well-established under Mississippi law that once the statute of limitations period begins to run on an open-ended credit account due to the failure to make payment as required, the subsequent payment by the debtor and acceptance by the creditor of "partial payments" on the account does not toll the running of the statute of limitations.[8] Mississippi law has been consistently clear that a verbal acknowledgement of a debt and promise to pay, or a written acknowledgment and promise to pay that is "vague and indefinite" is insufficient to take an account out of the operation of the statute of limitations. Instead, to take such a case out of the operation of the statute of limitations, the creditor must obtain from the debtor an express written acknowledgment of further indebtedness and an express promise to pay, which "must be definite and unequivocal."[9]

30.     Plaintiff has not provided Defendant with any such express written acknowledgment of indebtedness and renewed promise to pay as would be required to toll the statute of limitations.

31.     Pursuant to well-established Mississippi law, as of November 10, 2014, Defendant had no legal right to furnish information to the CRAs regarding the subject credit card accounts; or to charge interest, late fees, and other charges on the subject credit card accounts; or to request and process automatic payments through its AutoPay Program from Plaintiff's bank account for the

---

[7] Hawkins, 259 So. 2d at 698

[8] McArthur v. Acme Mech. Contractors, Inc., 336 So. 2d 1306, 1307–09 (Miss. 1976).

[9] Id. at 1307–09; United States Fid. & Guar. Co. v. Krebs, 190 So.2d 857, 861 (Miss.1966).

subject credit card accounts; or to place debt collection calls to Plaintiff regarding the subject credit card accounts.

32.     Plaintiff sent numerous written disputes to the CRAs wherein Plaintiff disputed the accuracy of the information contained in his credit reports concerning the subject CHASE credit card accounts, in accordance with 15 U.S.C. § 1681i, and thoroughly described the basis for why the information furnished by Defendant is inaccurate, explaining that the Mississippi statute of limitations had expired with respect to each of the CHASE credit card accounts, and specifically emphasized that pursuant to Miss. Code Ann. § 15–1–3, the accounts, their debts and all their incidents, are legally extinguished. Plaintiff also included citations to the seminal Mississippi Supreme Court decisions on this issue, and explained that those cases hold that Mississippi's statute of limitations is unlike other states, in that the expiration of the Mississippi statute of limitations legally extinguishes the debt and all its incidents, and therefore the debt no longer exists and nothing remains to be reported, and further included, among other things, a sworn and notarized affidavit attesting to the facts set forth in the dispute, a copy of his driver's license, and a copy of the letter sent to Plaintiff by CHASE dated July 18, 2018. By way of example, Plaintiff sent the following dispute letters to the CRAs, which represent a non-exhaustive list: written disputes were sent via Certified Mail Return Receipt to Transunion, Experian and to Equifax on or about December 31, 2018; written disputes were sent via Certified Mail Return Receipt to Equifax on or about March 8, 2019 and April 14, 2019.

33.     Plaintiff also submitted multiple written "direct dispute" notices to CHASE in accordance with the requirements of 15 U.S.C. § 1681s-2(a)(8) and 15 C.F.R. § 660.4, including, specifically, after Plaintiff received the above described letter from CHASE dated July 18, 2018, and included the same legal and factual information therein that was included in the written disputes

submitted by Plaintiff to the CRAs, setting forth the specific reasons that the debts associated with the subject credit card accounts had been legally extinguished by operation of Mississippi law, as generally outlined in the above paragraph, and demanding that CHASE notify the CRAs that the information it had furnished with respect to said credit card accounts was inaccurate, and withdraw all reference to the subject credit card accounts on Plaintiff's credit report.

34.     Despite CHASE having received each of the direct dispute notices from Plaintiff and each of the written disputes submitted by Plaintiff to the CRAs, which unequivocally confirmed that CHASE's furnishing of information to the CRAs regarding the subject credit card accounts was inaccurate as the accounts and debts being reported had been legally extinguished as of November 2014 at the latest, and no longer existed, Defendant failed to inform the CRAs that the information was inaccurate, and failed to take any action to delete the information as required under the FCRA, 15 U.S.C. § 1681s-2(b). On the contrary, Defendant has inexplicable continued to represent that the information it furnished and continues to furnish to the CRAs regarding the subject credit card accounts is accurate.

35.     As a direct and proximate result of CHASE's continued furnishing of inaccurate negative information about the subject credit card accounts to the CRAs with respect to Plaintiff after said accounts and any associated debts and incidents were legally extinguished by operation of Mississippi law, and after CHASE had been provided with information conclusively establishing the inaccuracy of the furnished information, Plaintiff has suffered injuries and damages, including but not limited to denials of credit and financing opportunities, limited access to credit, increased cost of credit, and increased costs for services factoring credit rating in pricing, making day to day life more expensive.

36.     Despite actual knowledge of its wrongdoing, CHASE continued its campaign of harassment and abuse.

37.     CHASE's corporate policy is structured to continue to call individuals like the Plaintiff, despite these individuals informing CHASE that its calls were being made in error and/or demanding that CHASE stop calling, and to continue furnishing inaccurate negative information to the CRAs despite having been put on notice that the information is inaccurate, and despite knowing or having reasonable cause to know that that the information being furnished is not accurate.

38.     CHASE's corporate policy provided no means for the Plaintiff to have his number removed from CHASE's call list or to have CHASE correct the inaccurate information being furnished to the CRAs regarding the legally extinguished credit card accounts and their debts.

39.     CHASE followed its corporate policy when placing the calls at issue to Plaintiff's aforementioned cellular telephone number and furnishing the inaccurate negative information concerning Plaintiff and the subject credit card accounts to the CRAs.

40.     CHASE has been the recipient of numerous complaints from debtors, alleged debtors, and non-debtors across the country, similar to those alleged in this action by Plaintiff.

41.     CHASE is or should be in possession and/or control of call logs, account notes, auto dialer reports and/or other records that detail the exact number of calls made to Plaintiff over the relevant time period.

## COUNT I
## <u>VIOLATION OF THE TCPA AGAINST CHASE</u>

42.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (41), as if fully set forth herein.

43.     None of the calls at issue were placed by CHASE to Plaintiff's aforementioned cellular telephone number with the "prior express consent" of Plaintiff, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

44.     Alternatively, CHASE initiated each of the calls at issue to Plaintiff's aforementioned cellular telephone number subsequent to Plaintiff's revocation of any "prior express consent" Plaintiff may have previously provided to CHASE, or that CHASE mistakenly believed it had.

45.     Additionally, none of the calls at issue were placed by CHASE to Plaintiff's aforementioned cellular telephone number for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

46.     CHASE willfully and/or knowingly violated the TCPA with respect to Plaintiff by repeatedly placing non-emergency calls to Plaintiff's aforementioned cellular telephone number using an automated telephone dialing system and/or prerecorded or artificial voice message without Plaintiff's prior express consent, and after Plaintiff instructed CHASE to discontinue calling Plaintiff both verbally and in writing, and after the debts for which the calls were made in an effort to collect had been legally extinguished and the debtor/creditor relationship had been terminated by operation of Mississippi law, as specifically prohibited by the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

47.     The TCPA provides Plaintiff with a private right of action against CHASE for its violations of the TCPA, as described herein, pursuant to 47 U.S.C.A. § 227(b)(3), and permits both injunctive relief in addition to statutory damages.

WHEREFORE, Plaintiff respectfully demands judgment against CHASE for statutory damages, actual damages, costs, interest, an injunction from further violations of these parts, and for such other relief as this Court deems just and proper.

## COUNT II

## VIOLATIONS OF THE FCRA AGAINST CHASE

43.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1)

through (41) as if fully set forth herein.

44.     At all times relevant to this action Defendant is subject to and must abide by federal

law, including the FCRA, 15 U.S.C. § 1681, *et seq*.

45.     Plaintiff is a consumer as defined by 15 U.S.C. § 1681a(c).

46.     Plaintiff submitted written disputes to the three CRAs and direct dispute notices to

CHASE disputing the information furnished by CHASE regarding the subject credit card accounts,

and specified the legal and factual basis establishing that the subject credit card accounts and the

associated debts had been legally extinguished by operation of Mississippi law, and requested that

the accounts be investigated and that the inaccurate reporting be corrected and removed from

Plaintiff's credit reports.

47.     Upon Defendant's receipt of notice by the CRAs of the above described disputes,

and despite being notified of the specific information in dispute and the specific statutory basis for

the extinguishment of the subject credit card accounts and debts reported by the CRAs on

Plaintiff's credit reports, and thus conclusively establishing the inaccuracy of the information

being furnished by CHASE regarding the same, Defendant failed to comply with its duties under

the FCRA to promptly report to the CRAs that the information furnished by CHASE regarding the

subject credit card accounts is inaccurate, and to promptly delete all information furnished

regarding the extinguished credit card accounts. Moreover, despite having received the disputes as

described herein, Defendant not only continued furnishing the inaccurate negative information

regarding the subject credit card accounts, Defendant also failed when furnishing said information

to provide the requisite notice that the subject credit card account information was disputed by the consumer.

48.     Accordingly, Defendant engaged in numerous acts or omissions in violation of 15 U.S.C. § 1681s–2(b), by failing to correct the inaccurate negative information it furnished to the CRAs, and which therefore continued to be reported on a monthly basis in Plaintiff's credit reports with each of the CRAs.

49.     As a direct and proximate result of Defendant's failure correct the inaccurate negative information it furnished to the CRAs regarding the subject credit card accounts and the associated debts and incidents, Plaintiff has suffered losses and damages, including but not limited to lost credit and financing opportunities, reduced access to credit, and increased cost of credit, making day to day life more expensive for Plaintiff.

50.     Defendant's noncompliance with the requirements of the FCRA, as described herein, was willful, subjecting Defendant to civil liability for said violations pursuant to 15 U.S.C. § 1681n.

51.     Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, actual damages, punitive damages, costs, interest, attorney's fees, and such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Respectfully Submitted,

*/s/ David P. Mitchell*
David P. Mitchell, Esquire

Florida Bar No.: 067249
MANEY & GORDON, P.A.
101 East Kennedy Blvd., Suite 3170
Tampa, Florida 33602
Telephone: (813) 221-1366
Fax: (813) 223-5920
David@MitchellConsumerLaw.com
Counsel for Plaintiff

## CERTIFICATE OF SERIVCE

I HEREBY CERTIFY that on this 14th day of September, 2019, I electronically filed the

foregoing with the Clerk of the Court using CM/ECF system, which will send a notice of electronic

filing via the Court's ECF system to all CM/ECF participants.

*/s/David P. Mitchell*
David P. Mitchell, Esq.